UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MBFMCA, LLC, <br> MIDWEST BUSINESS FUNDING, INC., <br> SCOTT CALLAHAN, <br><br> Plaintiffs, <br><br> v. <br><br> PAUL C MILLER, <br> BRIAN M LEVINE, <br> JAMES MILLER, <br> AXENTIA MCA SOLUTIONS, LLC, <br> AXENTIA CARD SOLUTIONS, LLC, <br><br> Defendants. | No. 1:23-cv-02162-JRS-KMB |

**Order on Various Motions**

### I. Introduction and Background

This is a business fraud case about a joint venture gone wrong. The Parties—not to mention the docket—are somewhat confused by their use of the single-member LLC, but really this is a fight amongst four men. (The Court pieces together the backstory from the Parties' allegations and filings to date; nothing here is yet proven.)

Alone on the Plaintiff side is Scott Callahan, of Indiana, who controls Midwest Business Funding, Inc., and MBFMCA, LLC. The main character on the other side is Paul Miller, of Kansas, who controls AxentAdvance Capital, LLC, Axentia Card Solutions, LLC, and Axentia MCA Solutions, LLC. These two men were introduced by Brian Levine, of New York, who controls 72nd Street Partners, LLC.

Because all three were interested in the merchant cash advance business—a type of short-term business lending, and the source of "MCA" in their entity names—they

joined forces to create Axent-Midwest Capital, LLC ("Accent-Midwest"). Callahan (through his LLC) and Paul Miller (through his LLC) each had a 45% stake in the new company, and Levine (yes, also through his LLC) had the remaining 10%. (Axent-Midwest Operating Agreement, ECF No. 30-1.)

Callahan alleges the joint venture was a fraud from the start. He says Paul Miller and Levine, who together held a controlling stake, shouldered him out of the business, used the company's start-up capital to pay off Paul Miller's preexisting debts, and otherwise funneled money out of Axent-Midwest, by way of yet another LLC "TC&J Management," to Miller, Levine, and Paul Miller's brother Jim.

Jim Miller, of Massachusetts—styled a "relief defendant" in Callahan's complaint—is the fourth and final player. He is supposed to have had outstanding loans to his brother, Paul, which, allegedly, Paul used the Axent-Midwest scheme to repay. Callahan seems to think that, aside from the little matter of taking his money back, nothing will be asked of Jim Miller here; Jim Miller, for his part, disagrees, and talks of cross-claims and counterclaims. (*See* James Miller's Response in Opposition to Plaintiffs' Application for Default 2–3, ECF No. 55.)

Callahan (through his entities MBFMCA and Midwest Business Funding) initially brought his claims in this district as Case No. 1:21-cv-02255-RLY-MPB, naming Axent-Midwest and TC&J as defendants. Those defendants, controlled of course by Miller and Levine, moved to compel arbitration, and Callahan acquiesced, voluntarily dismissing the case. Callahan then brought the same claims in arbitration. There, Paul Miller and Levine moved to dismiss, arguing that they

personally—as distinguished from their single-member LLCs—had never agreed to arbitrate. (Paul Miller and Levine's Arbitration Motion to Dismiss, ECF No. 36-1.) The arbitrator agreed and dismissed them. (Arbitrator's Order on Motion to Dismiss, ECF No. 36-2.) Later, the arbitrator dismissed the rest of the case on the grounds that MBFMCA, LLC, ostensibly the sole plaintiff in the arbitration, lacked "standing." (Arbitrator's Order on Claimant's Dispositive Motion, ECF No. 38-7.)

Now, here, Callahan is back, still seeking a merits ruling on the same claims he has brought all along: fraud, breach of contract, and unjust enrichment from the collapse of the Axent-Midwest venture. (Amended Complaint, ECF No. 20.) There has been no initial conference, and no case management plan is in place, but the Parties have been busy. The Court comes to rule on seven motions: Paul Miller's Motion to Dismiss or Compel Arbitration, (ECF No. 28), which would send the case back to arbitration; Jim Miller's Motion to Dismiss, (ECF No. 32), denying the Court's personal jurisdiction over him; another Motion to Dismiss from Jim Miller, (ECF No. 34), arguing he is not a proper "relief defendant" because he has a legitimate entitlement to the funds he received; another Motion to Dismiss from Paul Miller, (ECF No. 37), arguing personal jurisdiction and failure to state a claim; yet another Motion to Dismiss from Paul Miller, (ECF No. 39), again arguing the Court's lack of personal jurisdiction over him; a Motion to Dismiss from Brian Levine, (ECF No. 40), duplicative of Paul Miller's entry at ECF No. 37, again arguing personal jurisdiction and failure to state a claim; and another Motion to Dismiss from Brian Levine, (ECF

3

No. 43), this one duplicative of Paul Miller's entry at ECF No. 39, giving the Court the benefit of a fourth brief on personal jurisdiction.

That is quite a pile. The Parties are of course only allowed one Rule 12(b) motion each, *see* Fed. R. Civ. P. 12(g)(2), so the Court could strike or summarily deny some of them. But the Court will be lenient, help the Parties past these preliminary matters, and set the case up for a "just, speedy, and inexpensive determination." Fed. R. Civ. P. 1.

## II. Discussion

### A. Personal Jurisdiction

Each of the defendants to have appeared—Paul Miller, Jim Miller, and Brian Levine—contests this Court's jurisdiction over him. There is no general jurisdiction over these out-of-state residents, so the question is whether there is specific jurisdiction, that is, "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017)). Indiana law and the federal Constitution are coextensive here. *Id.* at 860. The Court looks for three elements to be met:

> (1) . . . the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) . . . the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) . . . the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

4

*Id.* at 861. Here, Callahan (and his business entities) were in Indiana the whole time. That means in forming the joint venture, Paul Miller and Levine solicited Callahan in Indiana; their allegedly fraudulent representations were made to an Indiana citizen in Indiana; the startup funds for the joint venture came in part from Indiana; and the joint venture contemplated ongoing disclosures to and management by Callahan in Indiana. Paul Miller and Levine came to Indiana (virtually) to do business with Callahan, this suit concerns that business, and it is no injustice to have Paul Miller and Levine answer their former partner's complaint in the state where they found him. The Court has personal jurisdiction over them.

The same cannot be said of Jim Miller. The Amended Complaint does not allege that Jim Miller knew of or participated in the Axent-Midwest scheme. He is alleged to have received the dirty money from Paul, but only as one of Paul's preexisting creditors. It is mere happenstance, to him, that the money Paul used to pay off his debt came from Indiana—it could have come from anywhere. Jim Miller himself never took up with Indiana at all: in personal jurisdiction terms he made no "purposeful availment" of the state, and the Court could not assert power over him without his consent. That said, personal jurisdiction is a waivable defense, *cf. Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023), and it appears from Jim Miller's latest filing that he intends to waive it. (Response in Opposition to Default 2–3, ECF No. 55 ("Jim will be filing a motion to withdraw his Motions to Dismiss, will

answer, and plans on asserting counterclaims against Plaintiff.")) The Court will await those developments before acting.[1]

### B. Stating a Claim

Federal courts use notice pleading. *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003). That makes it easy to state a claim: all a plaintiff needs to do is make some allegations that, if true, plausibly suggest a legal right to relief. *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). A plaintiff does not need to specify a legal theory, still less to match facts to the elements of that theory, and still less actually to introduce evidence before discovery. *Id.*; *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

Paul Miller and Levine fundamentally misunderstand those principles. The portions of their motions directed against Callahan's complaint rest on the assumption that Callahan has to have proved his case before it even begins. (*See, e.g.*, Br. Supp. M. Dismiss 5, ECF No. 38 ("Plaintiffs failed to provide proof[.]"); *id.* at 14 ("Plaintiffs have provided no evidence supporting their allegations[.]"), *id.* at 21 ("Plaintiffs Amended Complaint also claims unjust enrichment allegations . . . yet fails to meet any of the three elements, under Indiana Law, necessary to claim unjust enrichment.")) That assumption is false—ruling on the merits comes later—so their arguments fail.

---

[1] The wait-and-see approach is especially attractive here, where it could save the Court (and the Parties) from having to nail down the interaction, on these allegations, between the "rather obscure common law concept" of a "relief" or "nominal" defendant, personal jurisdiction, and Rule 19. *See S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) (giving overview of nominal-defendant doctrine and contrasting it with Rule 19).

Paul Miller and Levine clearly know what this case is about; the Amended Complaint put them on notice. The Complaint describes a scenario that, if true, would lead to relief on one or more legal theories. That means it has done all it needed to do.

### C. Arbitration

Paul Miller claims to want this case in arbitration. (Br. Supp. M. Compel Arbitration, ECF No. 30.) He argues that Callahan's breach of contract claims (which, the Court notes, are far from the entire case) fall within the scope of an arbitration clause in the Axent-Midwest operating agreement. That is a familiar argument: it is the same one Miller used in Case No. 1:21-cv-02255. Even the briefs are the same, in places.

The Court cannot credit it. Look what happened last time: Paul Miller argued for arbitration, and Callahan agreed. But Paul Miller argued against arbitration once there, and the arbitrator let him out. Now Callahan is back in court—never having received a merits ruling, against either Paul Miller or his business entities—and Paul Miller is back to arguing that the forum is wrong.

The procedural runaround must stop. When "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice," the Court can invoke judicial estoppel to "protect [itself]" and "prevent the perversion of the judicial process." *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990). Paul Miller has successfully argued to an arbitrator that he does not

7

belong in arbitration. Very well: that means no arbitration. The Court holds him to it.

Even if the Court were to entertain Paul Miller's arguments, the procedural history of the case has undermined them since his first go-round. One element Paul Miller must prove to compel arbitration is that the opposing party refused to go arbitrate. (Miller's Br. Supp. 8, ECF No. 23 (citing *Zurich American Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).) But the opposing parties agreed to arbitrate. The Court has no grounds to compel them now.

### III. Conclusion

After the dust settles, what result?

The Court has personal jurisdiction over Paul Miller and Brian Levine. Their Motions to Dismiss on that ground, (ECF Nos. 39, 43), are **denied.**

The Court has not yet reached the merits; Paul Miller and Levine's other Motions to Dismiss, (ECF Nos. 37, 40), misunderstanding the order of operations, are thus also **denied.** The Amended Complaint does enough to launch the case.

Paul Miller is not entitled to reverse his position on arbitration, and even if he were his argument for arbitration fails, so that Motion to Dismiss, (ECF No. 28), is also **denied.**

The Court **takes no action** on Jim Miller's two Motions, (ECF Nos. 32, 34), on the strength of his representation that he intends to withdraw them.

8

Finally, the Court exhorts the Parties to discipline their filings—the Court may not be so lenient with duplicate motions in future—and turn their attention to the merits.

**SO ORDERED.**

Date: 07/09/2024

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Sean P. Burke
MATTINGLY BURKE COHEN & BIEDERMAN LLP
sean.burke@mbcblaw.com

Hamish S. Cohen
MATTINGLY BURKE COHEN & BIEDERMAN LLP
hamish.cohen@mbcblaw.com

Jeffrey N. Furminger
MATTINGLY BURKE COHEN & BIEDERMAN LLP
jeff.furminger@mbcblaw.com

Peter R Ginsberg
Moskowitz Colson Ginsberg & Schulman
pginsberg@mcgsllp.com

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com