UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MBFMCA, LLC,<br>MIDWEST BUSINESS FUNDING, INC.,<br>SCOTT CALLAHAN, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 1:23-cv-02162-JRS-KMB<br>) |
| PAUL C MILLER,<br>BRIAN M LEVINE,<br>AXENTIA MCA SOLUTIONS, LLC,<br>AXENTIA CARD SOLUTIONS, LLC, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| JAMES MILLER, | )<br>)<br>) |
| Relief Defendant. | ) |

**ORDER GRANTING MOTION TO ENFORCE BANKRUPTCY STAY**

Presently pending before the Court is Relief Defendant James Miller's Motion to Enforce Bankruptcy Stay. [Dkt. 68.] The motion is opposed by Plaintiffs Scott Callahan, MBFMCA, LLC, and Midwest Business Funding, Inc. *Pro se* Defendants Paul Miller and Brian Levine have not filed briefs on this motion and their positions are unknown. Defendants Axentia MCA Solutions, LLC and Axentia Card Solutions LLC have not appeared in this lawsuit and Clerk's Entry of Default has been entered against them.

Having reviewed the Parties' briefs and relevant portions of the record, as well as portions of the bankruptcy proceedings, the Court finds that the motion should be **GRANTED**. Accordingly, this case is **STAYED** pending resolution of the bankruptcy petitions pending in the District of Kansas as further described in this Order. The **CLERK SHALL** procedurally close

this case. The Parties are **ORDERED** to promptly file a notice **within fourteen (14) days** if the Kansas Bankruptcy Court relieves the Plaintiffs from the bankruptcy stay and allows this lawsuit to proceed, if there is any significant development in the Kansas Bankruptcy Court of which the Parties want to make this Court aware, or if there are any other developments that would require any action from this Court.

## I. BACKGROUND

The facts set forth in this section are based on the allegations in the Amended Complaint, the Parties' briefs, and other relevant portions of the record. As such, they are not necessarily objectively true, but they are taken as true for the purposes of this Order.

### A. Background of Claims and Allegations

In 2019, Defendant Paul Miller was operating a struggling merchant cash advance business called AxentAdvance Capital, LLC ("AxentAdvance Capital"). [Dkt. 20 at ¶¶ 23, 27.] In October 2019, Paul Miller, his business associate Defendant Brian Levine, and Plaintiff Scott Callahan formed a new company called Axent-Midwest Capital, LLC ("Axent-Midwest"). [*Id.* at ¶ 33.] In December 2019, Axent-Midwest acquired AxentAdvance's merchant cash advance portfolio for $4,700,000. [*Id.* at ¶ 40.] That purchase price included (1) the assumption of debt to AxentAdvance for $1.5 million; (2) the assumption of debt to Paul Miller's brother (Relief Defendant James Miller) for $3,000,000; and (3) the assumption of debt to non-Party Elisse Porter for $200,000. [*Id.*]

When Axent-Midwest was formed, Paul Miller had a 45% stake in Axent-Midwest through his other company, Defendant Axentia MCA Solutions LLC ("Axentia MCA"). [*Id.* at ¶ 33.] Scott Callahan had a 45% stake in Axent-Midwest through his other company, Plaintiff MBFMCA,

LLC ("MBFMCA"). [*Id.*] Brian Levine had a 10% stake in Axent-Midwest through his other company, non-party 72nd Street Partners, LLC ("72nd Street Partners"). [*Id.*]

In March 2020, Scott Callahan, through MBFMCA, made a $500,000 investment in Axent-Midwest. [*Id.* at ¶ 47.] Plaintiff Midwest Business Funding, Inc. ("MBF") funded other deals that benefited Axent-Midwest with non-party Indy Acquisition Syndication. [*Id.* at ¶¶ 58-63.] Paul Miller eventually obtained a $500,000 investment from an unnamed investor in Texas, but neither he nor Brian Levine invested any of their own funds or funds belonging to their companies in Axent-Midwest. [*Id.* at ¶¶ 48-49.]

In April 2020, the ownership structure of Axent-Midwest changed. [*Id.* at ¶ 51.] Under the new structure, Paul Miller's ownership interest through Axentia MCA increased from 45% to 65%. [*Id.*] Brian Levine's ownership interest through 72nd Street Partners increased from 10% to 20%. [*Id.*] Scott Callahan's ownership interest through MBFMCA decreased from 45% to 15%. [*Id.*] Neither MBFMCA nor Scott Callahan received any consideration for this decreased ownership interest. [*Id.* at ¶ 50.] Paul Miller was named Sole Managing Member and Sole Signatory for Axent-Midwest. [*Id.*] Under this new structure, Paul Miller and Brian Levine effectively had complete control over all of Axent-Midwest's assets and operations, and Scott Callahan was effectively stripped of the authority he had when Axent-Midwest was first created. [*Id.* at ¶ 34.]

Scott Callahan was not able to resist changes to the ownership structure or the operations of Axent-Midwest, and he was not able to resign from the company. [*Id.* at ¶ 55.] He remained liable to multiple noteholders who had invested in Axent-Midwest, and he believed that those noteholders' interests would be unprotected if he left the company. [*Id.*]

Between December 2019 and October 2021, Axent-Midwest allegedly made thirty direct payments totaling $626,247.10 to defaulted Defendants Axentia MCA and Axentia Card Solutions,

3

LLC ("Axentia Card Solutions"), both of which were owned by Paul Miller.  [*Id.* at ¶ 64.]  On July 1, 2021, Axent-Midwest transferred $50,000 to Brian Levine's company 72nd Street Partners.  [*Id.* at ¶ 66.]  Axent-Midwest transferred additional funds totaling $500,528.84 to Axentia Card Solutions and 72nd Street Partners through an intermediary called TC&J Asset Management LLC ("TC&J").  [*Id.* at ¶ 68.]  At the time these transfers took place, TC&J was either wholly owned or effectively controlled by Paul Miller and Brian Levine.[1]  [*Id.* at ¶ 54.]  No money was ever transferred from Axent-Midwest to Scott Callahan or MBFMCA.  [*Id.* at ¶¶ 70-71.]

The Amended Complaint alleges that Paul Miller and Brian Levine created Axent-Midwest in order to defraud Scott Callahan and other investors and that any supposedly legitimate purpose of the company was merely a pretext for unlawful fraudulent activity.  The Amended Complaint provides, in relevant part:

> Axent-Midwest's business plan, as designed by [Paul] Miller and communicated to Callahan, was to raise funds from outside investors by issuing promissory notes pursuant to a private placement memorandum.  The funds raised from those investors would then purportedly be used to fund investment portfolios.
>
> [Paul] Miller's actual plan was to raise funds for Axent-Midwest to satisfy debt that was purportedly due to his brother and to him, by enticing Callahan to find investors from his vast business connections and to solicit investors using a [private placement memorandum].

[*Id.* at ¶¶ 44-45.]

The Amended Complaint further alleges that Paul Miller and Brian Levine intended to gain complete control of Axent-Midwest's operations in order to "hide that the investors whose funds

---

[1] TC&J had previously been jointly owned by Paul Miller, Brian Levine, and Scott Callahan through their various LLCs—Axentia MCA, 72nd Street Partners, and MBFMCA.  [Dkt. 20 at ¶ 35.]  The Amended Complaint alleges that "TC&J did absolutely no work and had no representatives or employees, no function, and no responsibilities."  [*Id.* at ¶ 36]  The creation of TC&J was allegedly part of Paul Miller's and Brian Levine's scheme to siphon investor funds away from Axent-Midwest and toward themselves.  [*Id.* at ¶ 35.]

4

Callahan was locating for Axent-Midwest were being used to pay off [Paul] Miller and James Miller's purported pre-existing debts and not to invest in new portfolios and for any other use that could generate profits for, or otherwise be for the benefit of, Axent-Midwest." [*Id.* at ¶ 50; *see also id.* at ¶ 106 (alleging that in creating Axent-Midwest, "[d]efendants had no intention to use investor funds to, and in fact did not, purchase or fund new portfolios").] Further, Paul Miller and Brian Levine allegedly misrepresented the value of AxentAdvance's MCA portfolio at the time Axent-Midwest was formed by failing to disclose that this portfolio "consisted largely of assets that were in default or were otherwise uncollectable, thereby depleting any funds that could have been used to advance funds to clients and customers" to generate profits. [*Id.* at ¶ 109.] According to the Amended Complaint, at the time of sale, "AxentAdvance was accumulating debt that far exceeded its profits." [*Id.* at ¶ 27.]

The Amended Complaint describes only three legitimate business deals involving Axent-Midwest. According to the Amended Complaint, MBF funded three deals in cooperation with non-party Indy Acquisition Syndication. [*Id.* at ¶¶ 58-63.] For the first deal, MBF provided $500,000. [*Id.* at ¶ 61.] For the second deal, MBF provided $150,000. [*Id.*] For the third deal, MBF provided $100,000. [*Id.*] Axent-Midwest participated in these deals by providing Indy Acquisition Syndication access to a platform developed by non-party eProdigy Financial. [*Id.* at ¶¶ 59-60.] At the conclusion of these deals, Indy Acquisition Syndication fully repaid its obligations. [*Id.* at ¶ 62.] MBF received its share of the profits from the first two deals. [*Id.*] For the third deal, however, Axent-Midwest allegedly failed to fully pay MBF its share and deprived MBF of approximately $255,175.50. [*Id.* at ¶ 63.]

Based on these allegations, Plaintiffs Scott Callahan, MBFMCA, and MBF bring claims against Defendants Paul Miller, Brian Levine, Axentia Card Solutions, and Axentia MCA for

5

breach of contract, unjust enrichment, fraud, and breach of fiduciary duty. [*Id.* at ¶¶ 72-116.] They seek damages in excess of $4,000,000 in Count I (Breach of Contract: Axent-Midwest Operating Agreement) and Count III (Unjust Enrichment: Axent-Midwest Operating Agreement). [*Id.* at ¶¶ 79, 95.] They seek damages in excess of $180,000 in Count II (Breach of Contract: TC&J Asset Management Operating Agreement) and Count IV (Unjust Enrichment: TC&J Asset Management Operating Agreement). [*Id.* at ¶¶ 87, 102.] The Amended Complaint does not specify the damages sought in the remaining Count V (Fraud in the Inducement) or Count VI (Breach of Fiduciary Duty). [*Id.* at ¶¶ 103-16.]

### B. Bankruptcy Proceedings

On June 5, 2024, Relief Defendant Paul Miller filed three involuntary bankruptcy petitions in the United States Bankruptcy Court for the District of Kansas ("Kansas Bankruptcy Court"). One petition involves Defendant Axentia Card Solutions. *See In re: Axentia Card Solutions LLC*, Case No. 24-20686 (Bankr. D. Kan.). The other petitions involve non-party Axent-Midwest and non-party AxentAdvance. *See In re: Axent-Midwest Capital LLC*, Case No. 24-20687 (Bankr. D. Kan); *In re: AxentAdvance Capital LLC*, Case No. 24-20685 (Bankr. D. Kan.).[2] On August 22, 2024, the Kansas Bankruptcy Court converted the involuntary bankruptcy petition against Axentia Card Solutions to a Chapter 11 proceeding. [Dkt. 78 at 3]; *see also In re Axentia Card Solutions LLC*, Case No. 24-20686, Dkt. 22 (August 22, 2024).

---

[2] Axentia MCA is owned by Paul Miller and is a member of Axent-Midwest. [Dkt. 20 at ¶ 33.] In their response brief, the Plaintiffs state that Axentia MCA is in bankruptcy, but they appear to be mistaken. [Dkt. 74 at 8.] As mentioned above, James Miller filed involuntary bankruptcy petitions against AxentAdvance, Axentia Card Solutions, and Axent-Midwest. [Dkt. 68 at 1 (citing to bankruptcy proceedings against those entities).]

## II. LEGAL STANDARD

The United States Bankruptcy Code provides for an automatic stay of litigation against a bankrupt debtor or the property of a bankruptcy estate during the pendency of a bankruptcy petition. 11 U.S.C. § 362(a). It provides, in relevant part:

> Except as provided in subsection (b) of this section, a petition filed under sections 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> >
> > . . .
> >
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a)(1), (3).

"The scope of the automatic bankruptcy stay is intended to be broad." *In re Klarchek*, 508 B.R. 386, 392 (Bankr. N.D. Ill. 2010). "The stay is imposed automatically in order to give the bankruptcy court an opportunity to assess the debtor's situation and to embark on an orderly course in resolving the estate." *United States v. Michalek*, 54 F.3d 325, 333 (7th Cir. 1995). The stay concentrates claims against the bankruptcy estate in a single forum and "prevents efforts by creditors to pick off or affect the disposition of assets in ways that may be privately beneficial but collectively harmful." *Natl'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708 (7th Cir. 1994). "The Bankruptcy judge then serves as dispatcher, resolving the claims that are conveniently treated together while releasing others for decision in their original forums." *Id.* (citing 11 U.S.C. § 362(d)).

### III. DISCUSSION

The Court will begin by addressing the effect of the involuntary bankruptcy petition filed against Axentia Card Solutions because that issue is straightforward.  James Miller argues that the involuntary petition against Axentia Card Solutions automatically stays all claims against Axentia Card Solutions in this lawsuit.  [Dkt. 69 at 8-9.]  In their response brief, the Plaintiffs' sole argument in opposition is that the automatic stay has not yet gone into effect because Axentia Card Solutions has filed a Motion to Dismiss the involuntary bankruptcy petition in the Kansas Bankruptcy Court.  [Dkt. 74 at 13-14.]  However, as James Miller points out in his reply brief, the Kansas Bankruptcy Court has since denied Axentia Card Solution's Motion to Dismiss and converted the bankruptcy petition to a Chapter 11 proceeding.  [Dkt. 78 at 3]; *see also In re Axentia Card Solutions LLC*, Case No. 24-20686, Dkt. 22 (August 22, 2024).  Given these circumstances, the automatic bankruptcy stay set forth in 11 U.S.C. § 362(a) clearly applies to Axentia Card Solutions, and the Motion to Enforce the Automatic Stay with regard to Axentia Card Solutions is **GRANTED**.

The more challenging question is whether the involuntary bankruptcy petition filed against Axent-Midwest automatically stays the claims against Defendants Paul Miller, Brian Levine, and Axentia MCA.  James Miller argues that while Axent-Midwest is not a party to this lawsuit, it is nevertheless the "real party in interest" because the Amended Complaint alleges that Axent-Midwest's assets were unlawfully diverted by Paul Miller and Brian Levine.  [Dkt. 69 at 1.]  The crux of James Miller's argument is that all of Axent-Midwest's creditors—including himself, the Plaintiffs, and others—should attempt to claw back assets the Defendants unlawfully diverted from Axent-Midwest via the proceedings in the Kansas Bankruptcy Court and that it would be improper and unfair for the Plaintiffs to use this lawsuit to skip the line and cut off the other creditors from recoverable assets belonging to the Axent-Midwest bankruptcy estate.  [*Id.* at 5.]

8

The Plaintiffs make three arguments in response. First, they contest that Axent-Midwest is the "real party in interest." In their view, the real parties in interest are Paul Miller and Brian Levine. They argue that these individuals stole distributions from Axent-Midwest that should have been paid to the Plaintiffs and dispute that any of the damages they seek in this lawsuit belong to Axent-Midwest or the Axent-Midwest bankruptcy estate. [*See* dkt. 74 at 9 ("Plaintiffs allege that Paul Miller and Levine had no right to hide the distributions from Callahan and had no right to deprive Callahan of his rightful share of the membership distributions.").] Second, they argue that James Miller's subjective intent in filing the involuntary bankruptcy petitions and moving to stay these proceedings is to delay these proceedings and thwart the interests of justice. [*See id.* ("The automatic stay provision was not designed to protect a person in James Miller's position who is engaging in machinations designed to avoid his own exposure as a relief defendant.").] Third, they argue that the present motion is procedurally improper and that the automatic bankruptcy stay may only be expanded to encompass claims against non-debtor litigants through a motion filed in and granted by the Kansas Bankruptcy Court. [*Id.* at 14.]

James Miller replies that multiple creditors have appeared in the Axent-Midwest bankruptcy proceedings and that at least one of those creditors has inquired into transactions between Axent-Midwest and Paul Miller. [Dkt. 78 at 3.] He notes that the Amended Complaint alleges that the Defendants unlawfully diverted funds from Axent-Midwest, which likely drove the company into bankruptcy. [*Id.* at 6.] He argues that the unlawfully diverted funds should return to the Axent-Midwest bankruptcy estate and that all of the company's creditors should submit claims through the bankruptcy trustee. [*Id.* at 6-7.] He also contests the Plaintiffs' argument that he filed the involuntary bankruptcy petition in bad faith and argues that he is also a victim of his brother Paul's fraudulent activity. [*Id.* at 10-11.] Finally, he emphasizes that bankruptcy stays

9

under 11 U.S.C. § 362(a) are automatic and that for this reason he was not required to file a motion for a bankruptcy stay in the Kansas Bankruptcy Court. [*Id.* at 12.]

Generally, an automatic bankruptcy stay under 11 U.S.C. § 362(a)(1) applies to proceedings against a bankrupt debtor but not to the debtor's co-defendants or other individuals or entities that have factual or legal relationships with the debtor, such as shareholders or subsidiaries. *Top Jet Enters., LTD v. Sino Jet Holding, LTD*, 2022 WL 326169, at *1 (Bankr. D. Kan. Feb. 3, 2022) (collecting cases). However, the automatic stay does apply when the action against a non-debtor is merely "a cloaked attempt to find assets of the bankrupt debtor." *Top Jet*, 2022 WL 326169, at *2. For example, "a third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362(a)(1)." *Id.* (quoting *In re Colonial Realty Co.*, 980 F.2d 125, 131-32 (2d Cir. 1992)); *see also In re Klarchek*, 508 B.R. 386, 394 (Bankr. N.D. Ill. 2014) ("The protection of the automatic stay extends to any action or proceeding against an interest of the debtor. The scope of this protection is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation.") (quoting *In re Kaiser Aluminum*, 315 B.R. 655, 658 (D. Del. 2004)).

The Court agrees with James Miller that Axent-Midwest is the "real party in interest" in this litigation. In opposition to the pending motion, the Plaintiffs argue that this lawsuit has nothing to do with fraudulent conveyances of assets belonging to Axent-Midwest. Instead, they argue that Paul Miller and Brian Levine "deprive[d] Callahan of his rightful share of the membership distributions" from Axent-Midwest. As an initial matter, that argument contradicts the allegations set forth in the Amended Complaint. According to the Amended Complaint, Axent-Midwest was not a legitimate company with legitimate business operations. To the contrary, the Amended

10

Complaint alleges that Axent-Midwest was primarily a front operation by which Paul Miller and Brian Levine obtained large sums of money from Scott Callahan and other investors "to pay off [Paul] Miller and James Miller's purported pre-existing debts and not to invest in new portfolios and for any other use that could generate profits for, or otherwise be for the benefit of, Axent-Midwest." [Dkt. 20 at ¶ 50.] The Court does not interpret the Amended Complaint as alleging that Plaintiffs Scott Callahan or MBFMCA were due any legitimate distributions from Axent-Midwest's business activities; rather, it alleges that, like other investors, they were defrauded by Paul Miller and Brian Levine. The only description of a legitimate distribution allegedly withheld from a Plaintiff is the $255,175.50 that Axent-Midwest allegedly failed to pay MBF for their joint deal involving Indy Acquisition Syndication. [*Id.* at ¶ 63.] However, that allegation merely creates an inference that MBF is a creditor of the Axent-Midwest bankruptcy estate and that Axent-Midwest was unable to meet its financial obligation due to fraudulent conveyances by Paul Miller and Brian Levine.

The Court is not persuaded by the Plaintiffs' argument that James Miller seeks to enforce the bankruptcy stay in bad faith. First, the Amended Complaint alleges that James Miller is a creditor of Axent-Midwest for approximately $3,000,000, which if true would give him a legitimate interest in having all claims against Axent-Midwest proceed in an orderly manner in a single forum. [*Id.* at ¶ 40.] Second, the Amended Complaint alleges that Defendant Paul Miller and Plaintiff Scott Callahan recruited other investors in Axent-Midwest who may also be creditors of the Axent-Midwest bankruptcy estate. [*Id.* at ¶¶ 49, 50, 55.] Third, multiple creditors in addition to James Miller have appeared in the Axent-Midwest Bankruptcy proceedings. *See In re Axent-Midwest Capital LLC*, Case No. 24-20687, dkts. 5, 11, 13, 14 (Bankr. D. Kan.). The bankruptcy stay is meant to protect the interests of all creditors, and the Court is concerned that allowing the

Plaintiffs to recover assets that Paul Miller and Brian Levine allegedly siphoned from Axent-Midwest will leave those creditors with nothing. *See Porter v. Nabors Drilling USA, L.P.*, 854 F.3d 1057, 1061 (7th Cir. 2017) (explaining that the bankruptcy stay "assures creditors that the debtor's other creditors are not racing to various courthouses to pursue independent remedies to drain the debtor's assets"). Given the legitimate interests of these other creditors, the Court will not entertain the Plaintiff's request to vacate the automatic bankruptcy stay based solely on the subjective motivations of James Miller, whatever those motivations may be.

Finally, the Court is not persuaded by the Plaintiffs' procedural argument that James Miller needed to file a motion in the Kansas Bankruptcy Court to stay the claims in this lawsuit. James Miller is not seeking to expand the scope of the bankruptcy stay; rather, he is seeking to enforce the *automatic* bankruptcy stay with respect to the claims brought by the Plaintiffs in this lawsuit. *See Top Jet*, 2022 WL 326169, at *2 (enforcing automatic bankruptcy stay in lawsuit involving non-debtor litigants). Because the Kansas Bankruptcy Court is best positioned to determine this lawsuit's impact on the Axent-Midwest bankruptcy estate, this Court finds that the necessary course of action at this time is to enforce the automatic bankruptcy stay while the Axent-Midwest bankruptcy proceedings move forward. Nothing in this Order precludes the Plaintiffs from seeking relief from the bankruptcy stay in the Kansas Bankruptcy Court. *See Palladino v. HSBC Bank USA, N.A.*, 502 F. Supp. 3d 1336, 1338-40 (N.D. Ill. 2020) (reviewing bankruptcy court order granting relief from automatic bankruptcy stay) (citing 11 U.S.C. § 362(d)).

In sum, the Court finds that there are automatic bankruptcy stays in place as a result of the bankruptcy proceedings in the Kansas Bankruptcy Court. These bankruptcy stays preclude further litigation of the Plaintiffs' claims in this Court at this time. Accordingly, the claims proceeding in this lawsuit are **STAYED** and this action will be **PROCEDURALLY CLOSED** at this time. If

the Kansas Bankruptcy Court grants relief from one or more of the bankruptcy stays described herein, any Party may file a notice informing the Court of those developments and move to reopen this case.[3]

## IV. CONCLUSION

Relief Defendant James Miller's Motion to Enforce Automatic Bankruptcy Stay is **GRANTED**. [Dkt. 68.] All claims in this action are hereby **STAYED** pending resolution of the bankruptcy proceedings described in this Order. All other pending motions, deadlines, hearings, and conferences are **VACATED** or **DENIED WITHOUT PREJUDICE**. The **CLERK SHALL PROCEDURALLY CLOSE** this action. The Parties are **ORDERED** to promptly file a notice **within fourteen (14) days** if the Kansas Bankruptcy Court relieves the Plaintiffs from the bankruptcy stay and allows this lawsuit to proceed, if there is any significant development in the Kansas Bankruptcy Court of which the Parties want to make this Court aware, or if there are any other developments that would require any action from this Court.

So **ORDERED**.

Date: 10/4/2024

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

PAUL C MILLER
9242 High Drive
Leawood, KS 66206

---

[3] James Miller also seeks a stay of proceedings pursuant to § 362(a)(3) (imposing automatic bankruptcy stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"). Because the Court has enforced the bankruptcy stays under § 362(a)(1), it need not consider whether another subsection of the bankruptcy code also applies in this instance.

BRIAN M LEVINE
210 East 35th Street
Apartment 3A
New York, NY 10016